WASHOE INVESTMENT, INC., a Nevada Corporation, Appellant, *v.* THE STATE OF NEVADA and NEVADA GAMING COMMISSION, Respondents.

No. 7081

February 26, 1975                    532 P.2d 265

[Rehearing denied March 27, 1975]

*McDonald, Carano, Wilson & Bergin,* and *Gary Wood* and *John J. Frankovich,* of Reno, for Appellant.

*Robert List,* Attorney General, and *David C. Polley,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

This action was commenced by Washoe Investment, Inc., against the State of Nevada and the Nevada Gaming Commission to recover the sum of $32,399.85 representing an advance deposit paid to the State in excess of the actual license fee due for the final quarter of its operation.

1. An advance deposit was paid to the State on November 1, 1968, in the amount of $44,266.90 as required by NRS 463.370(3).[1] Washoe Investment, Inc., terminated its gambling operation at the Crystal Bay Club, Lake Tahoe, on June 1, 1970. The license fee due Nevada as of that date was $11,867.05. This suit seeks a refund of the difference between

---

[1]NRS 463.370(3): "When a licensee is operating under a provisional license, the payment of the fee due for the first quarter of operation based on the gross revenue derived from gambling pursuant to this section shall be accompanied by the payment of a fee in like

those two amounts. There is no contention that as of the close of business on June 1, 1970, Washoe Investment was delinquent in any payments due the State. It is conceded that it had paid all fee obligations in full.

Notwithstanding these stipulated facts, the State and the Gaming Commission insist that the amendment to NRS 463.-370(3) footnoted below somehow allows the State to retain the overpayment.

Whatever the purpose and intended effect of the amendment may have been, it cannot be construed to authorize the State to keep license fees paid in excess of those due at the close of the licensee's gambling operation. The amendment authorizes neither confiscation nor forfeiture. Since the stipulated facts show an advance deposit greater by $32,399.85 than the actual fee due for the final quarter of the licensee's operation, the licensee must win this case unless otherwise legally barred.

2. It is the respondents' contention that the claim for refund is legally barred by reason of the claimant's failure to meet a precondition to suit. The claimant did not submit its claim to the Board of Examiners before filing this action.

Several statutes bear upon this contention. Every claim against the State for refund shall be presented in accordance with NRS 353.110 to 353.120, inclusive.[2] Such is the command of NRS 41.036. The advance deposit was paid to the Gaming Commission, under protest, on November 1, 1968. The licensee terminated its business operation on June 1, 1970. From July 1, 1970, to December 1970, the claimant and staff members of the Commission met to determine the licensee's

---

amount, *which shall be a deposit and shall be applied to the actual fee due for the final quarter of operation."*

Effective July 1, 1969, the italicized portion of the quoted statute was deleted, and in lieu thereof, the following words were substituted: "Thereafter, each quarterly license fee shall be paid in advance based on the gross revenue of the preceding quarter. Any deposit held by the Commission on the effective date of this act shall be treated as such advance payment."

[2]NRS 353.110: "1. Whenever an amount has been paid into a county treasury for taxes which exceeds the amount required by law to be paid for the applicable tax year, and all or part of the amount so paid has been deposited in the state treasury, a claim for refund of that portion of the overpayment which has been deposited in the state treasury may be made only to the state board of examiners.

"2. Whenever an overpayment of a license fee, tax or other charge has been made to any state agency or officer, except under the circumstances specified in subsection 1, the agency or officer may, subject to the provisions of any other applicable law, refund the amount of the

claim to refund. The Commission denied the claim by letter dated April 5, 1971. This action was filed May 12, 1971.

Although only the State Board of Examiners may order the state controller to draw a warrant for the amount of the overpayment (NRS 353.120), it does not follow, as the respondents contend, that the claim for refund must be presented to that Board in every case. NRS 353.110(2) permits the agency to whom overpayment is made to refund the amount of overpayment after obtaining the approval of the State Board of Examiners. Accordingly, it would appear that submission of the claim to the agency for approval or denial, is an acceptable alternative to submitting the claim directly to the Board of Examiners. Cf. Kaminski v. Woodbury, 85 Nev. 667, 462 P.2d 45 (1969), where the claim was submitted to one not authorized to act upon it.[3] We, therefore, reject the respondents' argument that Washoe Investment, Inc., failed to comply with an essential precondition to suit.

The order of dismissal is reversed, and this case is remanded to the district court with direction to enter judgment in favor of the plaintiff and against the defendants for the sum of $32,-355.90 plus interest thereon at the rate of 7 percent per annum from June 1, 1970, until paid. NRS 99.040; Paradise Homes v. Central Surety, 84 Nev. 109, 437 P.2d 78 (1968).

GUNDERSON, C. J., and BATJER, ZENOFF, and MOWBRAY, JJ., concur.

---

overpayment after obtaining the approval of the state board of examiners."

NRS 353.115: "A claim for refund of money deposited in the state treasury or paid to a state agency or officer shall be made within 1 year from the date of such deposit or payment unless: 1. Payment was made under protest; or 2. The statute applicable to claims against or refunds by a particular state agency or officer prescribes a different period."

NRS 353.120: "1. If the state board of examiners is satisfied of the correctness and justice of a claim for refund of money paid into a county treasury and deposited in the state treasury, it shall order the state controller to draw his warrant for the amount of the overpayment so deposited in favor of the person entitled to the refund.

"2. Every refund ordered or approved by the state board of examiners shall be paid: (a) From the fund into which the money refunded was originally paid, if there are unencumbered moneys in that fund. (b) Otherwise, from the reserve for statutory contingency fund."

[3]We express no opinion as to the impact of our ruling in Turner v. Staggs, 89 Nev. 230, 510 P.2d 879 (1973), upon the claim statute issue presented in this case.